# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | | |
|---|---|---|
| JOHN POULLARD | * | CIVIL ACTION NO. 07-1948 |
| | | SEC. P |
| VERSUS | * | JUDGE STAGG |
| RICHARD STALDER, LOUISIANA DEPARTMENT OF CORRECTIONS | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus,* 28 U.S.C. § 2254, filed on November 15, 2007, by *pro se* petitioner, John Poullard. Petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at David Wade Correctional Center in Homer, Louisiana where he is serving a 50 year sentence following a 1987 conviction for attempted murder. The matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For reasons assigned below, it is recommended that petitioner's motion for default judgment [doc. # 32] be **DENIED** and that the petition be **DISMISSED** with prejudice.

## STATEMENT OF THE CASE

In February 1987, a jury in the 27th Judicial District Court for the Parish of St. Landry, State of Louisiana found John Poullard guilty of attempted second degree murder. *State v. Poullard*, 532 So.2d 327 (La. App. 3d Cir. 1988). On September 18, 1987, the state court sentenced Poullard to 50 years at hard labor. (Petition, pg. 10). Under the law then in effect, Poullard was eligible to receive a diminution of sentence or "good time" for good behavior which

accrued at a rate of thirty days for every thirty days in actual custody. *See*, La. R.S. 15:571.3. At the time of Poullard's 1986 felony, his subsequent conviction, and initial sentencing,[1] the law provided that, except for escape, an inmate could forfeit no more than 30 days of earned good time. La. R.S. 15:571.4. Effective August 15, 1995, the Louisiana legislature amended the statute to permit a maximum forfeiture of up to 180 days per infraction. *Rivera v. State*, 727 So.2d 609 (La. App. 1st Cir. 1998) (citing Louisiana Acts 1995, No. 980).[2]

On April 29, 2004,[3] prison authorities disciplined Poullard with the loss of 120 days of accumulated good time due to an April 27, 2004, disciplinary violation. *See*, Petition, pg. 12; *Poullard v. Stalder*, Docket No. 2005 CA 1907 (La. App. 1st Cir. Sept. 20, 2006) (unpubl.).[4] Poullard unsuccessfully appealed the disciplinary action within the prison system. *Poullard,*

---

[1] The court re-sentenced Poullard on September 5, 1995. *Id*.

[2] The Louisiana Department of Public Safety and Corrections adopted rules and regulations to implement the amendment, effective January 4, 1999. *See, Washington v. Louisiana State Penitentiary*, 740 So.2d 761, 765 n5 (La. App. 1st Cir. 1999).

[3] The Louisiana First Circuit Court of Appeal stated that Poullard forfeited his good time on May 29, 2004. *Poullard, supra*.

[4] According to Poullard, he was charged with cursing, a Schedule B offense under the prison disciplinary system, La. Admin. Code 22 Pt. I:365 (D). (Petition, pg. 12).
The Louisiana Administrative Code currently in effect, authorizes the disciplinary board to impose one or two of the following penalties for a Schedule B violation: a) reprimand; b) loss of minor privilege for up to 12 weeks, unless violation involved abuse of that privilege, then up to 24 weeks; c) confinement to room or cell for up to 30 days; d) extra duty—up to 8 days for each violation; e) disciplinary detention/isolation—up to 10 days for each violation; f) forfeiture of good time—up to a maximum of 180 days for each violation; g) quarters change; h) job change; I) loss of hobbycraft—up to 12 months; j) custody change from minimum to medium custody status; k) custody change from minimum or medium custody status to maximum custody status; l) loss of visiting; and/or loss of incentive wages for up to one year. La. Admin. Code 22 Pt. I:359

*supra*. Thus, on July 19, 2004, he filed a petition for judicial review in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana. *Id*. Poullard argued that the forfeiture of 120 days of good time exceeded the 30 day maximum period authorized by the statute as it existed at the time of his 1986 offense. *Id*. He concluded that the prison's application of Louisiana Revised Statute 15:571.4, as amended by 1995 Louisiana Acts No. 980 was unconstitutional because it violated the prohibition against applying laws ex post facto. *Id*. The state district court dismissed Poullard's petition. *Id*. Poullard timely appealed the dismissal to the Louisiana First Circuit Court of Appeal. *Id*.

In its decision, the Louisiana court of appeal focused upon the law in effect at the time that the forfeiting conduct occurred. *Poullard, supra*. The court reasoned that because Poullard's 2004 forfeiting conduct occurred after the 1995 amendment to Louisiana Revised Statute 15:571.4 and the implementing regulations, there was no ex post facto violation due to Poullard's prior notice that an act of defiance could result in a loss of up to 180 days of earned good time. *Id*. The court found no merit to Poullard's argument that application of these provisions increased his original sentence for attempted murder. *Id*. Thus, the court affirmed the dismissal. *Id*.

On October 19, 2006, Poullard applied for a writ of certiorari to the Louisiana Supreme Court. (Petition, Appx. A). However, the supreme court denied the writ, without discussion. *Poullard v. Stalder*, Docket No. 2006-CI-2513 (La. Aug. 15, 2007); Petition, Exh. B. On November 15, 2007, Poullard filed the instant *pro se* petition for writ of *habeas corpus* under 28 U.S.C. § 2254. He alleges that the state court decision(s) violates the Ex Post Facto Clause of the United States Constitution as interpreted by the United States Supreme Court.

3

On April 18, 2008, in order to determine what action, if any, to take on the application, the undersigned ordered service upon respondent. (April 18, 2008, Memorandum Order). The Clerk of Court served the Secretary for the Louisiana Department of Public Safety and Corrections and the Warden of David Wade Correctional Center with the petition and summons on April 22, and April 24, 2008, respectively. (*See*, Acknowledgments of Service [doc. #s 26-27]). Respondent failed to file responsive pleadings; thus, on June 5, 2008, the Clerk of Court issued a Notice of Entry of Default. On June 12, 2008, petitioner filed a motion to confirm default judgment [doc. # 32]. To date, respondent has not made an appearance. The matter is now before the court.

## LAW AND ANALYSIS

### I. Default Judgment

As set forth above, petitioner is seeking a default judgment against respondent. Courts, however, hesitate to grant default judgments in state habeas cases. *See, U.S. ex rel. Mattox v. Scott*, 507 F.2d 919, 924 (7th Cir. 1974); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970); *Urquizo v. Quarterman*, 2008 WL 1998729 (S.D. Tex. May 8, 2008).[5] A state official's failure to file a timely return does not relieve the prisoner's burden of proof. *Allen, supra*. Rather, the district court should proceed as if the state authorities had filed a response, that is it "shall summarily hear and determine the facts, and dispose of the matter as law and justice require." *Mattox, supra* (quoting 28 U.S.C. § 2243). Even in an ordinary civil case, a defendant's default does not automatically warrant a default judgment. *Nishimatsu Const. Co., Ltd. v. Houston Nat.*

---

[5] In *Wiggins v. Procunier*, the Fifth Circuit recited the holding in *Mattox* that default judgment is not an appropriate remedy for a state's failure to respond to a habeas corpus petition. *Wiggins v. Procunier*, 753 F.2d 1318, 1321 (5th Cir. 1985).

4

*Bank*, 515 F.2d 1200 (5th Cir. 1975). A "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id*. The defendant, by his default, admits solely the well-pleaded allegations of fact within plaintiff's petition. *Id*. (citation omitted).

Accordingly, the court will accept the instant petitioner's allegations of fact and analyze whether those facts entitle him to relief as a matter of law.

## II. Exhaustion and Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must exhaust his claims in state court before presenting them to a federal court for review. *See* 28 U.S.C. § 2254(b)(1)(A). The undersigned finds that petitioner exhausted his claim in the state courts and that it is timely presented here.

## III. Standard of Review

The scope of this court's review is governed by the AEDPA. *See Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910 (2001). Courts are to review "both pure questions of law and mixed questions of law and fact under § 2254(d)(1)." *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Courts review questions of fact under § 2254(d)(2). *Id.*

### A. § 2254(d)(1)

Under § 2254(d)(1), a state-court decision can be overturned if it satisfies one of two conditions. First, it can be overturned if it "is contrary to [the Supreme] Court's clearly established precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166 (2003). A decision is contrary to precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133,

5

141, 125 S.Ct. 1432 (2005).

Second, a state-court decision can be overturned under § 2254(d)(1) if it is an "unreasonable application" of clearly established Supreme Court precedent. *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527 (2003). An "unreasonable application" occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case." *Wiggins*, 539 U.S. at 520. "[T]he state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." *Id.* at 520-21.

### B. § 2254(d)(2)

A decision can be overturned under § 2254(d)(2) if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Williams v. Taylor*, 529 U.S. 362, 386, 120 S.Ct. 1495 (2000).

### IV. Ex Post Facto Clause

The United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law . . ." U.S. Const., Art. I, § 10. To prevail on an ex post facto claim, petitioner must show "both that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted." *Johnson v. United States*, 529 U.S. 694, 699, 120 S.Ct. 1795, 1800 (2000).[6]

---

[6] Justice Chase identified four categories of ex post facto laws:
1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the

In this case, it is manifest that Louisiana increased the potential penalty for disciplinary infractions after Poullard committed the offense for which he was imprisoned. However, the disciplinary act which caused Poullard to lose his accumulated good time credit occurred after the change in the law and after the Louisiana Department of Public Safety and Corrections enacted implementing rules and regulations. The highest state court to issue reasons for its decision in this matter is the court of appeals. The court denied petitioner's ex post facto claim because it determined that at the time of the forfeiting conduct, Louisiana Revised Statute 15:571.4 had already been amended, and petitioner had sufficient notice that a subsequent act of defiance could result in a loss of up to 180 days of cumulated good time. *Poullard, supra*. The court cited a Louisiana appellate court decision that relied upon a Louisiana Supreme Court decision which held that when considering ex post facto consequences of a statute that increased penalties for future crimes based upon past offenses, the relevant offense is the current crime, not the original crime. *See, Payton v. Cooper*, 928 So.2d 605, 608 (La. App. 1st Cir. 2006) *writ denied by Payton v. Hubert*, 956 So.2d 616 (La. 2007) (citing *State v. Rolen*, 662 So.2d 446, 448 (La. 1995)).[7]

---

time of the commission of the offence, in order to convict the offender. *Calder v. Bull*, 3 U.S. 386, 3 Dall. 386, 1 L.Ed. 648 (emphasis deleted).

[7] The issue before the Louisiana Supreme Court in *Rolen* was whether a change in the law that increased from five to ten years the period that prior DWI convictions could be used to enhance a current DWI conviction violated the Ex Post Facto Clause. *Rolen, supra*. In finding no ex post facto violation, the court relied upon the following language from *Weaver v. Graham*, "[c]ritical to relief under the Ex Post Facto clause, . . . is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Id*. (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964 (1981)). *Rolen* also relied upon several federal court decisions which found no ex post facto implications for repeat offender statutes and the like because the courts emphasized the current crime rather than the predicate crime. *Id*.

Of course, an enhanced sentence for a crime following a prior conviction is not the same as extending the prison sentence of a prior crime due to a subsequent prison infraction. Whether the state court in its ex post facto analysis reasonably relied upon a line of cases addressing the former situation to justify its focus upon the law as it existed at the time of Poullard's prison infraction is open to debate. Nevertheless, the Fifth Circuit has emphasized that a habeas court must focus upon the reasonableness of the state court's *ultimate* decision. *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (emphasis added). Accordingly, the undersigned will proceed to analyze whether the underlying state court decision in this matter is contrary to, or involves an unreasonable application of, clearly established Supreme Court precedent.

In *Lynce v. Mathis*, the State of Florida enacted a law to reduce prison overcrowding by awarding inmates early release credits. *Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891 (1997). Due to his accrual of early release credits, petitioner was released from prison in 1992. *Id*. However, the same year that he was released, Florida canceled early release credits for certain classes of inmates which resulted in petitioner's re-arrest and re-incarceration with a projected release date in 1998. *Id*. In deciding that Florida violated the Ex Post Facto Clause by applying the amended law to petitioner, the Court focused not upon the subjective motivation of the legislature, but whether "objectively the new statute 'lengthen[ed] the period that someone in petitioner's position must spend in prison.'" *Lynce*, 519 U.S. at 442 (quoting *Weaver v. Graham*, *supra*). The Court cited its prior jurisprudence which looked to whether the statutory change had the potential to adversely affect the prisoner's sentence or term of confinement. *Id*. (citing *Miller*

---

(citations omitted).

*v. Florida*, 482 U.S. 423, 107 S.Ct. 2446(1987) and *California Dept. of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597 (1995)).

In *Weaver v. Graham*, the Supreme Court found that Florida violated the Ex Post Facto Clause when it passed a law that reduced the amount of early release credits which petitioner otherwise could have earned under the law in effect at the time of sentencing and when he committed his underlying offense. *Weaver, supra*. The Court noted that the critical component of an ex post facto claim is not the petitioner's right to less punishment,

> but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Id*. (citations omitted). The court further stated that the question was whether the new law changed the consequences for acts committed before the law's effective date. *Id*. Petitioner was disadvantaged by the reduced opportunity to shorten his prison time via good conduct. *Id*.

The *Weaver* Court also cited *Greenfield v. Scafati*, wherein it summarily affirmed a three judge district court opinion holding that a statute enacted after the petitioner was convicted violated the Ex Post Facto Clause when it was applied to deny early release credit to the petitioner for the first six months after a parole revocation. *Weaver, supra* (citing *Greenfield v. Scafati*, 277 F.Supp. 644 (Mass.1967) (three-judge court), *affirmed*, 390 U.S. 713, 88 S.Ct. 1409 (1968). Under the law in effect at the time of his sentencing, petitioner would have accumulated enough good time to secure his release. *Greenfield, supra*. The court noted that in Massachusetts, the availability of good conduct deductions is considered an essential element of

the sentence. *Id*. (citation omitted). The court found that petitioner suffered a material change in circumstances between merely facing parole termination versus loss of parole *and* an increased prison term. *See, Greenfield, supra*.

In *Beebe v. Phelps*, the Fifth Circuit sustained the district court's decision to uphold petitioner's ex post facto challenge. *Beebe v. Phelps*, 650 F.2d 774 (5th Cir. 1981). In *Beebe*, the state authorities revoked petitioner's parole and withdrew 180 days of previously earned good time. *Id*. At the time that petitioner was sentenced, Louisiana Revised Statute 15:571.4(B) did not address what effect a parole revocation had on previously earned good time. *Id*. Thereafter, however, the legislature amended the statute to provide that inmates who were subsequently returned to prison for a parole violation would also forfeit up to 180 days of good time credit. *Id*. In other words, the good time forfeiture provision was in effect at the time of petitioner's parole, but not at the time he committed the initial offense which landed him in prison. *Id*. The *Beebe* court distinguished cases discussing statutes which enhanced punishment for multiple offenses because in those cases, the defendant was being punished for the subsequent offense or offenses, rather than the initial offense. *Id*.[8] In *Beebe*, the fact that petitioner had notice that he would forfeit his good time if he violated parole was not determinative; rather, the crucial issue was that the forfeiture provision altered the punishment for his initial crime. *Id*. The court noted that petitioner received a separate prison term for his parole violation, and the forfeiture of good time was a sanction that increased his original sentence. *Id*.

A case that closely tracks the instant circumstances is a California state court decision, *In Re: Ramirez*, 39 Cal. 3d 931, 705 P.2d 897 (Cal. 1985), *cert. denied by Ramirez v. California*,

---

[8] *See e.g., United States v. Saenz-Forero*, 27 F.3d 1016 (5th Cir. 1994).

476 U.S. 1152, 106 S.Ct. 2266 (1986). The issue in *Ramirez* was whether California's new statutory plan for awarding sentence reduction credits violated the Ex Post Facto Clause as applied to prisoners who committed crimes before the effective date of the new procedures. *Id*. Among other things, the new provisions increased the good behavior benefits subject to forfeiture; added offenses which resulted in loss of good behavior credits; and removed the limit on credits subject to forfeiture during any given eight month period. *Id*. As a result of the change, petitioner forfeited 48 days of good credit time following a post-amendment infraction which under the prior law would have resulted in a maximum forfeiture of 15 days. *Id*.

The *Ramirez* court found that the changes in the law disadvantaged petitioner. *Id*. It then considered whether the changes were retrospective. *Id*. Citing *Weaver*, the court observed that "[a] retrospective law violates the ex post facto clauses when it substantially alters the consequences attached to a crime already completed, and therefore changes the quantum of punishment." *Id*. (citing *Weaver, supra*) (internal quotation marks omitted). Nonetheless, the court found that the amendments were not retrospective because the increased sanctions were imposed as a result of petitioner's prison misconduct which occurred after the changes went into effect. *Id*. The court added that "[t]here is a critical difference between a diminution of the ordinary rewards for satisfactory performance of a prison sentence-the issue in *Weaver* -and an increase in sanctions for *future misbehavior* in prison-which is at issue here." *Id*. (emphasis in original). The court further distinguished *Weaver* on the basis that petitioner's sentence was not altered by the new procedures unless he chose to alter his sentence, "by his own action." *Id*.[9]

---

[9] Although the court observed *Weaver's* recognition that "'a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed,'" it concluded that "the

Indeed, petitioner had fair warning that if he committed certain acts after the effective date of the changes, he would be subject to increased sanctions. *Id*.[10]

In another context, the circuit courts have struggled with the ex post facto implications of 18 U.S.C. § 3583(h) as applied to defendants who committed their underlying crimes prior to the statute's enactment. *See e.g., United States v. Beals*; 87 F.3d 854 (7th Cir. 1996), *overruled by United States v. Withers*, 128 F.3d 1167 (7th Cir. 1997); and *United States v. Reese*, 71 F.3d 582 (6th Cir. 1995). The statutory change authorized district courts to impose an additional term of supervised release following revocation and re-imprisonment for violating an initial term of supervised release. *See, Beals, supra*. The result was that the defendant could end up with a longer sentence for violating the terms of the supervised release. *Id*. The scenario boiled down to: "(1) a defendant commits an offense ("original offense"); (2) the law is changed such that the

---

frequency and seriousness of a defendant's future prison misconduct is too contingent and remote to influence significantly either defendants or trial courts before plea and sentencing." *Id*.

[10] The California Supreme Court also distinguished *Greenfield v. Scafati*, on the grounds that *Greenfield* focused upon conduct occurring outside prison walls, and a ruling favorable to petitioner did not have the effect of immunizing prisoners for rule violations. *Id*.

Interestingly, three justices on the U.S. Supreme Court dissented from the Court's decision to deny a writ of certiorari . *Ramirez v. California*, 476 U.S. 1152, 106 S.Ct. 2266 (1986). In his dissent, Justice White wrote that *Ramirez* conflicted with the Fifth Circuit decision in *Beebe v. Phelps*, and was in "tension" with *Weaver v. Graham*. *Id*. While this court cannot make any inferences from the majority's refusal to hear the *Ramirez* case, the fact that they did not summarily reverse the decision could mean that the issue was not cut and dried or clearly foreclosed by precedent.

In *Hallmark v. Johnson*, the Fifth Circuit determined that a statutory change which withdrew the ability of the Texas Board of Criminal Justice to restore forfeited good time credits to prisoners did not transgress the Ex Post Facto Clause. *Hallmark v. Johnson*, 118 F.3d 1073 (5th Cir. 1997). The court found that there was only a speculative possibility that the new legislation would increase the petitioners' prison terms. *Id*. (citing *Cal. Dep't of Corrections v. Morales*, 514 U.S. 499, 508-10, 115 S.Ct. 1597, 1603 (1995)). The court favorably cited *In Re Ramirez, supra,* observing the distinction between the situation confronted in *Weaver v. Graham*, versus a situation where a prisoner faces an increased penalty for future misbehavior. *Id*.

original offense allows a new or increased punishment if the defendant subsequently engages in certain conduct ("subsequent conduct"); and (3) the defendant then engages in the subsequent conduct and is assessed the new or increased punishment." *Id*. (citing *Reese, supra*).

The *Beals* court noted that two lines of cases had developed in response to these circumstances; the first line addressed recidivist statutes, *see, Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256 (1948), whereas, the second confronted parole violations, *Greenfield v. Scafati*, *supra*. *Id*. The *Beals* court reconciled the dichotomy on the basis that in the recidivist statute cases, the government was punishing the defendant's "subsequent conduct" because of its nature, – not because of the defendant's original offense. *Id*. In the parole violations cases, the court emphasized that often the subsequent conduct was not a crime, thus, the government punished the subsequent conduct only because of the defendant's original offense. *Id*.[11]

In *Ewell v. Murray*, the Fourth Circuit considered the ex post facto ramifications of a 1990 Virginia law that required every inmate to provide a blood sample for the state's DNA data bank. *Ewell v. Murray*, 11 F.3d 482 (4th Cir. 1993). Four inmates who committed crimes prior to 1990 challenged the new law and its implementing regulations which mandated loss of good conduct credits if an inmate failed to comply. *Id*. The court framed the issue as a "narrow question of whether prison officials may, consistent with the Ex Post Facto Clause, reasonably increase the penalties for prospective violations by inmates of reasonable prison regulations when the penalties may involve the loss of good conduct time credits." *Id*. In finding no ex post facto violation, the court determined that the punishment was not for the original crime, but for the

---

[11] In *Johnson v. United States*, the Supreme Court relied upon its decision in *Greenfield v. Scafati*, to resolve the circuit split and find that post-revocation penalties are properly attributed to the original conviction. *Johnson*, 529 U.S. at 700-701.

inmate's subsequent conduct which occurred after the policy change and after the inmate had fair and adequate notice of the consequences of his future actions. *Id.*[12]

In *United States v. Byrd*, defendant pled guilty and received five years of probation in lieu of imprisonment. *United States v. Byrd*, 116 F.3d 770 (5th Cir. 1997). Defendant subsequently violated the terms of her probation, whereupon the court revoked her probation and sentenced her pursuant to the law as amended since the time of her original sentence. *Id*. Application of the new law resulted in a greater sentence than defendant otherwise would have received under the law in effect at the time she committed her initial offense. *Id*. The Fifth Circuit found that the district court did not plainly err in applying the enhanced sentence because a prior Fifth Circuit decision stated in dicta that application of the amended provision did not violate the Ex Post Facto Clause when the "'acts which exposed the defendant to resentencing under § 3565 [ i.e., the acts underlying the probation revocation] occurred after the amendment' to that statute." *Id*. (quoting *United States v. Female Juvenile*, 103 F.3d 14 (5th Cir.1996)). The Fifth Circuit acknowledged other cases that supported a different outcome, *e.g., Greenfield v. Scafati* and *Beebe v. Phelps*, but found that the district court was not derelict in failing to apply by analogy the rationale of those cases. *Id*.

Where do these cases leave us? The readily apparent conclusion from the survey of decisions is that petitioner has not demonstrated that the adverse state court decision in this matter contravened or unreasonably applied clearly established Supreme Court precedent. The Supreme Court decision in *Greenfield v. Scafati* is reasonably distinguishable on the basis that it

---

[12] *See also, Jones v. Murray*, 962 F.2d 302 (4th Cir.), *cert. denied*, 506 U.S. 977, 113 S.Ct. 472 (1992); *Gilbert v. Peters*, 55 F.3d 237, 239 (7th Cir. 1995)

addressed probation revocation, plus an additional penalty which resulted in an increased prison term. *See, Greenfield v. Scafati, supra.* Likewise, in *Beebe v. Phelps*, the petitioner forfeited good time following a parole violation, *in addition to* a separate prison term for the conduct that led to the parole violation. *Beebe, supra.* The parole revocation cases are not dispositive in the instant context not only because of their differences by nature, but because the criminal defendant in those cases suffered a penalty on top of the loss of parole or probation.

In the case *sub judice*, petitioner alleges that prison authorities revoked 120 days of good time credit as a sanction for cursing. While petitioner would not have been penalized but for his original crime which landed him in prison and subjected him to the prison regulations that he later transgressed, a "but for" test would necessarily implicate recidivist laws and relate them to the initial crimes. Under the instant circumstances, where there is no evidence that petitioner suffered any sanction for his post-amendment conduct other than the loss of accumulated good time credits, it does not necessarily follow that the penalty must be linked to his initial crime for purposes of the Ex Post Facto Clause.

In the end, this court need not decide whether the state court correctly resolved this problematic issue. For purposes of this petition, it suffices to conclude that the state court decision is not contrary to, nor does it unreasonably apply, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).[13]

---

[13] There is no indication that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## CONCLUSION

For the reasons set forth above,

**IT IS RECOMMENDED** that John Poullard's motion for a default judgment [doc. # 32] be **DENIED**, and that the Petition for *Habeas Corpus* pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 6th day of August 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE